IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

UNITED STATES OF AMERICA,   No. 03:12-cr-00339-HZ

        Plaintiff,   OPINION & ORDER

v.

QUAN TU,

        Defendant.

S. Amanda Marshall
United States Attorney
District of Oregon
Stacie F. Beckerman
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204

    Attorneys for Plaintiff

Alison M. Clark
Office of the Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204

    Attorney for Defendant

1 - OPINION & ORDER

HERNANDEZ, District Judge:

On June 26, 2012, a federal grand jury indicted defendant on one count of failing to update his registration as a "sex offender," as required by the Sex Offender Registration and Notification Act ("SORNA"). Defendant moves to dismiss the indictment for lack of jurisdiction, contending that he is not required to register as a sex offender under SORNA.

Defendant also moves to strike the presentence report ("PSR"), which the government filed under seal as an exhibit to its response to the motion to dismiss. I deny defendant's motion to strike, and grant defendant's motion to dismiss the indictment.

## BACKGROUND

On November 13, 2002, defendant pleaded guilty to the charges of (1) Conspiracy to Transport Individuals in Furtherance of Prostitution, 18 U.S.C. § 371, and (2) Interstate Transportation in Furtherance of Prostitution, 18 U.S.C. § 2421. On March 7, 2003, a judgment was entered against him on these offenses in the United States District Court of the Western District of Washington. The current indictment is based on the government's contention that these 2003 convictions require defendant to register as a sex offender under SORNA.

I. DEFENDANT'S 2003 WASHINGTON CONVICTIONS

Defendant pleaded guilty to the following specific elements of the Conspiracy to Transport Individuals in Furtherance of Prostitution charge:

> [1] . . . defendant agreed with at least one other person to transport individuals in interstate commerce with the intent that such individuals engage in prostitution;
> [2] . . . defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and
> [3] . . . one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

Ex. B to Def.'s Mem. in Supp. Mot. Dismiss ("Def.'s Ex.") at ¶ 2a.

As for the Interstate Transportation in Furtherance of Prostitution charge, defendant pleaded guilty to the following elements: "[1] knowingly and intentionally transported, or aided or abetted the transportation of, a person in interstate or foreign commerce; and . . . [2] intended that such person engage in prostitution." Id. at ¶ 2b.

Defendant's plea agreement details his involvement in a prostitution ring as a brothel owner. Prior to and continuing through September 17, 2002, defendant entered into an agreement with others to "transport individuals in furtherance of prostitution." Id. at ¶ 7a. The object of the conspiracy of this prostitution ring was to make money through the recruitment and employment of women. Id. at ¶ 7b. Defendant's role within this prostitution ring was to "transport, exchange, and rotate" young women from Asian countries to engage in prostitution throughout the United States. Id.

Beginning in or before 2001, and continuing until defendant's arrest on September 17, 2002, defendant operated a brothel in Portland, Oregon. Id. at ¶ 7c. The Asian women who stayed at defendant's brothel worked as prostitutes. Id. Defendant also discussed the travel arrangements with the women and transported them to the airport so they could travel to brothels in other cities to work as prostitutes. Id.

Defendant and the other brothel operators referred the women to each other's brothels. Id. at ¶¶ 7d-e. They also talked about the women, including discussing the women's future arrival dates, their physical descriptions, and their relationships with an "agent of prostitutes" who "supplied" defendant and the others with women. Id. at ¶¶ 7e, g, h. Defendant himself visited the brothels of other ring members as a client. Id. at ¶¶ 7d, f.

///
///

# DISCUSSION

## I. STATUTORY SCHEME

SORNA seeks to protect the public from sex offenders generally. 42 U.S.C. § 16901. SORNA requires sex offenders to register, and to keep their registrations current, in each jurisdiction where they reside, work, and attend school. 42 U.S.C. § 16913(a). A "sex offender" under SORNA is an "individual who was convicted of a sex offense." 42 U.S.C. § 16911(1). SORNA's definition of a "sex offense" includes: a criminal offense that has an element involving a sexual act or sexual contact with another, a federal offense under chapter 117 of Title 18, or an attempt or conspiracy to commit any sex offense as defined by SORNA.[1] 42 U.S.C. § 16911(5)(A)(i), (iii), (v). Importantly for the purposes of this motion, SORNA excludes from its definition of a sex offense those offenses "involving consensual sexual conduct" if the victim was an adult. 42 U.S.C. § 16911(5)(C).

## II. DISCUSSION

Defendant's criminal convictions are "sex offenses" as defined under SORNA because the convictions include the element of prostitution. His conviction of Interstate Transportation in Furtherance of Prostitution, 18 U.S.C. § 2421, is a federal offense under chapter 117 of Title 18. And his criminal conviction of Conspiracy to Transport Individuals in Furtherance of Prostitution, 18 U.S.C. § 371, was a conspiracy to commit a federal offense under chapter 117 of Title 18.

The issue in this case is whether defendant's convictions were offenses involving "consensual sexual conduct," thereby exempting his convictions from SORNA's "sex offense" definition and exempting him from the registration requirement. In order to address this exemption issue, this court must determine whether defendant's guilty plea to the criminal

---

[1] SORNA includes in its definition of "sex offense" other offenses not relevant to this case.

offenses necessarily admits certain elements that meet the exemption under section 16911(5)(C). The first question is whether this court must limit the evidentiary review strictly to defendant's convictions (the "categorical approach," and its extension, the "modified categorical approach"), or whether the federal statute allows review of the underlying facts of his convictions (the "circumstance-specific approach"). United States v. Mi Kyung Byun, 539 F.3d 982, 990 (9th Cir. 2008). The second question is whether each approach allows consideration of the plea agreement or the PSR. And third, if each type of document may be considered, the question is whether the document shows or proves an element of consensual sexual conduct by an adult or, conversely, an element of lack of consent.

      A. Categorical Approach and Modified Categorical Approach

          1. Categorical Approach

Under the categorical approach, a court reviews only the fact of conviction and the statutory definition of the prior offense in order to compare the elements of the crime of conviction with a "federal definition of the crime to determine whether conduct proscribed by the statute is broader than the generic federal definition." United States v. Gonzalez-Aparicio, 663 F.3d 419, 425 (9th Cir. 2011) (internal quotation marks omitted). The court may not review the particular facts underlying the defendant's conviction in a plea context. Taylor v. United States, 495 U.S. 575, 600-02 (1990). In Taylor, the Supreme Court recognized the dangers in looking beyond the charging document and the judgment, noting in particular the unfairness this would cause in a plea context. Id. at 601-02. Here, there is no dispute that the categorical approach is inappropriate because the statutes of conviction include elements broader than the exemption to SORNA's definition of a sex offense.

///

2. Modified Categorical Approach

In the event the statute of the conviction is overly inclusive, a court may go beyond the mere fact of conviction and apply the extended analysis known as the modified categorical approach. Gonzalez-Aparicio, 663 F.3d at 425 (citing United States v. Rodriguez-Guzman, 506 F.3d 738, 746-47 (9th Cir. 2007) (modified categorical approach was applied when the court found the state statute's age of consent at eighteen years was overly inclusive of the federal statute's age of consent at sixteen years)). The purpose of the modified categorical approach is to "determine if the record unequivocally establishes that the defendant was convicted of the generally defined crime, even if the statute defining the crime is overly inclusive." Lara-Chacon v. Ashcroft, 345 F.3d 1148, 1153 (9th Cir. 2003) (internal quotation marks omitted).

Under this modified categorical approach, a court may "determine, in light of the facts in the judicially noticeable documents, (1) what facts the conviction necessarily rested on . . . ; and (2) whether these facts satisfy the elements of the generic offense." Gonzalez-Aparicio, 663 F.3d at 425 (quoting United States v. Aguila-Montes de Oca, 655 F.3d 915, 940 (9th Cir. 2011) (en banc)). The court may rely on the "statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Shepard v. United States, 544 U.S. 13, 16 (2005).

It is clear that under the modified categorical approach, this court may review the plea agreement to determine whether defendant's convictions contain an element of "consensual sexual conduct." However, contrary to the government's argument, the plea agreement does not provide facts to support an element of "lack of consent." The facts detailed in the plea agreement show that, as a brothel owner, defendant arranged for the transportation, exchange, and rotation of the women, employed the women in his brothel, and discussed with other brothel

owners the women scheduled to arrive or depart. These facts do not establish that defendant's convictions involved an element of lack of consensual sexual conduct.

   B.  Circumstance-Specific Approach

When a federal statute refers to "the *specific way* in which an offender committed the crime on a specific occasion," a circumstance-specific approach is applied. Nijhawan v. Holder, 557 U.S. 29, 34 (2009) (emphasis added). Under this approach, the court looks to the "facts and circumstances underlying an offender's conviction." Id.

In Nijhawan, the Court applied a circumstance-specific approach based on the statute's reference to the "particular circumstances" under which a crime was committed. Id. at 32. The Nijhawan petitioner was convicted by a jury of money laundering and of conspiring to commit fraud. Id. The government argued that the petitioner's fraud conviction fell within the federal immigration law's definition of "aggravated felony" and sought his removal. Id. at 32-33. The term "aggravated felony" is defined by a list of offenses, which includes the federal offense of fraud or deceit "in which the loss to the victim or victims exceeds $10,000." Id. at 32. The question turned to whether the monetary threshold was an element of fraud or deceit that required a categorical approach, or whether the threshold referred to a "specific way in which an offender committed the crime on a specific occasion." Id. at 34. The Court in Nijhawan held that the monetary threshold element of fraud or deceit called for a circumstance-specific approach because it referred to the "particular circumstances in which an offender committed a (more broadly defined) fraud or deceit crime on a particular occasion." Id. at 32.

Under this circumstance-specific approach, the Court in Nijhawan did not limit its review to the evidentiary limits applied in the modified categorical approach. Id. at 42. The Court agreed with the petitioner that the "[immigration] statute foresees the use of fundamentally fair

procedures, including procedures that give an alien a fair opportunity to dispute a Government claim" about a prior conviction. Id. at 41. However, the Court rejected the petitioner's argument that such fairness required the evidentiary limits of the modified categorical approach. Id. The Court did not specify just how far a court may go in reviewing the circumstances surrounding a conviction. The Court simply concluded that there was "nothing unfair" about the immigration judge's reliance on "earlier sentencing-related material," mainly the petitioner's stipulations at the sentencing hearing. Id. at 42.

In the instant case, the government argues that the relevant SORNA language calls for a circumstance-specific approach based on the statute's reference to a specific way a prior sex offense was committed. The government further contends that the court may consider the PSR. The government asserts that the underlying circumstances of defendant's conviction, as revealed in the PSR, include instances of violence and threats to some of the women.[2] The government also asserts that based on the general nature of the prostitution ring, the court may find an inherent lack of consent by the women. Although the violence and threats made to the women were not perpetrated by defendant, the government attempts to draw an inference that defendant must have known of the threats against the women, and therefore his criminal convictions did not involve consensual sexual conduct.

I agree with the government that the statutory language of the exemption to the "sex offense" definition under section 16911(5)(C), referring to "consensual sexual conduct," appears consistent with a circumstance-specific approach allowing consideration of the specific facts and circumstances underlying defendant's convictions. However, the government's argument fails to address the propriety of examining conduct revealed in a circumstance-specific approach as the

---

[2] Specifically, the government seeks judicial notice of the victim statements contained in the PSR.

basis for an entirely new conviction.  Nijhawan itself suggested that its circumstance-specific approach was appropriate in immigration cases only because the Court could find "nothing in prior law that [] limit[ed] the immigration court[]" from reviewing additional evidence as to facts and circumstances.  Nijhawan, 557 U.S. at 41.  Nijhawan expressly acknowledged that "a deportation proceeding is a civil proceeding in which the Government does not have to prove its claim 'beyond a reasonable doubt.'"  Id. at 42.  Therefore, I am reluctant to adopt the Nijhawan circumstance-specific evidentiary review here.

However, I need not resolve the issue in the instant case.  Even if I conclude that the circumstance-specific approach is appropriate in this context and that I may consider the PSR under a circumstance-specific inquiry, the PSR does not show that defendant's convictions involved a lack of consensual sexual conduct.  First, the existence of a conspiracy to transport individuals in furtherance of prostitution does not by itself establish coercive conduct.  Second, the PSR does not show that defendant himself was aware of threats against any victim or that he himself threatened the women.  Although the PSR refers to threats of violence regarding debts to the agents and regarding working at a different brothel without notifying the brokers, the PSR does not reveal that defendant himself knew of, or carried out, any of these actions.  Thus, the PSR does not help the government in the present case.

In summary, the parties agree the categorical approach is not appropriate here.  Under the modified categorical approach, the plea agreement does not establish that the defendant acted coercively.  Although the circumstance-specific approach may be warranted given the "conduct" language in section 16911(5)(C), it should not be applied in the context of a new criminal conviction which carries a high standard of proof.  However, even if the circumstance-specific approach is applied here and the PSR is considered, the PSR does not show a lack of consent.

Defendant's prior criminal convictions constitute "sex offenses" as defined under SORNA.  See 42 U.S.C. § 16911(5)(A)(i), (iii), (v).  Nonetheless, the convictions are exempted from the definition of "sex offense," and therefore defendant is exempt from SORNA's registration requirement.

III.  DEFENDANT'S MOTION TO STRIKE THE PSR

Defendant also moves to strike the PSR from the record or, alternatively, to disregard the PSR from the court's review.  In support of the motion, defendant argues that because consideration of the PSR is inappropriate under the categorical, modified categorical, and circumstance-specific approaches, the PSR should not be part of this record.  While defendant may be correct about the relevance of the PSR, that does not require its exclusion from the record.  I deny the motion to strike.

## CONCLUSION

Defendant's motion to strike [#25] is DENIED.  Defendant's motion to dismiss the indictment [#13] is GRANTED.

IT IS SO ORDERED.

Dated this __15__ day of November, 2012.

*Marco Hernandez*
MARCO A. HERNANDEZ
United States District Judge